# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD LEON BOONE,       **)** | Civil Action No. 2: 12-cv-1333 |
|     Plaintiff,     **)** | |
|       **)** | United States Magistrate Judge |
| v.       **)** | Cynthia Reed Eddy |
|       **)** | |
| C. O. DAUGHTERY, DR. DASCANI,   **)** | |
| LORI KWISNEK, PATRICIA MEISTER,  **)** | |
| DR. MOLLURA, DEBBIE YOTHERS, C.  **)** | |
| O. SHEETZ, KEN SANDERS AND   **)** | |
| W. ALLAMON,   **)** | |
|       **)** | |
|     Defendants.   **)** | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court are the following:

(1)　Motion for Summary Judgment filed by Plaintiff, Edward Leon Boone (ECF No. 77), the Response in opposition filed by Defendants Dr. Dascani, Dr. Mollura, and Debra Yothers, P.A. (the "Medical Defendants") (ECF No. 93), and the Response in opposition filed by Defendants C. O. Daughtery, Lori Kwisnek, C. O. Sheetz, and Ken Sanders[1] (the "Commonwealth Defendants") (ECF No. 102);

(2)　Motion for Summary Judgment filed by the Medical Defendants, with brief in support (ECF Nos. 89 and 90), and the Response in Opposition filed by Plaintiff (ECF Nos. 106 and 108); and

(3)　Motion for Summary Judgment filed by the Commonwealth Defendants, with brief in support (ECF Nos. 98 and 99), and the Response in Opposition filed by Plaintiff (ECF Nos. 108 and 111).

---

[1]　The Commonwealth Defendants state that Defendant Sanders' actual name is Ken Sanner.

The issues have been fully briefed and the factual record has also been thoroughly developed. *See* ECF Nos. 91, 92, 100, 101, 104, 105, 109,110, and 112.

After careful consideration of the motions, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff, Edward Leon Boone. Therefore, for the reasons that follow, the Motion for Summary Judgment filed by Plaintiff will be denied in its entirety, the Motion for Summary Judgment filed by the Medical Defendants will be granted as to Plaintiff's federal claims, and the Motion for Summary Judgment filed by the Commonwealth Defendants will be granted as to Plaintiff's federal claims. Additionally, summary judgment will be granted *sua sponte* to Defendants Patricia Meister and W. Allamon. Plaintiff's state law claims of negligence and breach of confidentiality will be dismissed without prejudice.

## BACKGROUND

Plaintiff, Edward Leon Boone, a state prisoner currently incarcerated at the State Correctional Institution at Pittsburgh, PA, has filed a complaint pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, in which he alleges that, while incarcerated at SCI-Greensburg, Defendants violated his rights and caused him irreparable harm.[2] Plaintiff asserts numerous state law and constitutional claims, including: breach of confidentiality, medical malpractice / negligence and deliberate indifference.

Named as defendants are various individuals employed by the Department of Corrections ("DOC") and medical professionals at SCI-Greensburg. Defendant W. Allamon has not been

---

[2] The operative complaint is Plaintiff's Fifth Amended Complaint. (ECF No. 72.)

served.  *See* ECF No. 79, Notice of Inability to effectuate service filed by U.S. Marshal as to Defendant Allamon.

Plaintiff alleges that he was first diagnosed as HIV positive in March 2006, and that such diagnosis was confirmed at SCI-Dallas during his pre-release examination in December 2010 conducted prior to being released on parole.   After violating his parole, in October 2011, Plaintiff was returned to prison.  At the time of his intake evaluation on October 5, 2011, at SCI-Greensburg, Plaintiff was thoroughly questioned about his past and present medical condition. Plaintiff expressly denied being HIV positive.  *See* Initial Reception Screening / PV Returns Greater Than 90 Days (ECF No. 92, Exhibit 7).

Beginning in early February 2012, Plaintiff's routine lab results revealed an unusual white blood cell count.  Defendant Yothers ordered a repeat blood test on February 7, 2012.  The test was repeated on February 13, 2012, with similar results.   Dr. Mollura ordered a third blood test, which was performed at the end of February 2012 and produced similar results to the prior two tests.

The medical record evidence reflects that on February 29, 2012, Defendant Yothers reviewed Plaintiff's medical file, and  noted that during Plaintiff's pre-release examination conducted in December 2010, Plaintiff was diagnosed as HIV positive and that Plaintiff was informed of this diagnosis on December 15, 2010.   Upon learning this information, Dr. Mollura referred Plaintiff to the Infectious Disease Clinic. Plaintiff  began receiving HIV treatment on March 7, 2012.

The summary judgment medical record of evidence reflects that Plaintiff was seen by Dr. Mollura in mid-March 2012, with complaints of weakness and coughing.  At that time, he was

prescribed a five (5) day antibiotic treatment.  At the conclusion of those five (5) days, Plaintiff

alleges that he returned to the medical unit complaining of, *inter alia,* fatigue, decreased

appetite, and difficulty breathing.  He alleges that he was seen by Defendant Sanner, who took

his vitals, told him nothing was wrong, and sent him back to his cell without having Plaintiff

examined by either a physician's assistant or a doctor.  Pl's Mot for Summ. J. at 7 (ECF No. 77.)

Plaintiff contends that within twenty-four (24) hours of seeing Defendant Sanner, his condition

worsened and he was rushed to Westmoreland Regional Hospital ("WRH") for treatment.

On March 23, 2013, Plaintiff was admitted to WRH, where he stayed until his discharge

on March 31, 2013. (ECF No. 92, at Exhibit 9).  Plaintiff alleges that due to the delay of

treatment for his HIV, "it progressed and formed pneumonia, TB and Hepatitis B, and Plaintiff

nearly lost his life."   ECF No. 104, ¶ 4 at 2.

Upon Plaintiff's discharge from WRH, he had a follow-up appointment with Dr. Dascani.

According to Plaintiff, although he requested otherwise, Dr. Dascani kept the office door open,

which resulted in other inmates overhearing confidential information and "rumors spreading

around the Jail."  Fifth Amended Complaint, at 4.  (ECF No. 72.)  Furthermore, according to

Plaintiff, a few days later, on April 4, 2012, Dr. Dascani visited the day room in the mental health

/ medical unit where Plaintiff was being housed.  He called Plaintiff into the hallway to discuss

his medical condition and, according to the Complaint, Dr. Dascani:

> said the word (HIV) very loudly.  [Plaintiff] politely asked him again not to say
> (HIV), but to say condition.  He refused and said that he was going to specify
> what it is, so that [Plaintiff] know what he was talking about.

*Id*. at 4.  The two had a "brief verbal confrontation," and Dr. Dascani told Plaintiff that in the

future, he would make sure that they were in a confidential area when discussing medical

matters. Plaintiff alleges that inmates overheard this conversation and subjected him to "mental and emotional anguish." *Id*.

On or about April 10, 2012, Plaintiff was temporary transferred to the infirmary at SCI-Fayette while awaiting the results of his TB test. Defendants Sheetz and Daughtery transported Plaintiff by van to SCI-Fayette. At the instruction of Dr. Mollura, all three wore medical face masks during the transport. (ECF No. 92, at Exhibit 8). According to Plaintiff, upon exiting SCI-Greensburg, the van was inspected at the outer gate by a community work program inmate, who was informed by "the driver" of the van[3] that Plaintiff had TB.[4]

The parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* ECF Nos. 18, 20, and 29.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metropolitan Life Ins. Co*., 391 F.3d 497, 502 (3d Cir. 2004).

---

[3] Boone alleges, for the first time, in his response to Commonwealth Defendants' Brief in support of summary judgment that Defendant Daugherty was the "driver who breached his confidentiality, when he told CWP inmates [he] was positive for TB." (ECF No. 108 at 10). As Boone is a prisoner appearing *pro se* the Court will treat this factual allegation as though it was included in Boone's complaint. *See Baker v. Younkin*, No. 13-1580, --Fed. Appx.--, 2013 WL 3481724, at *2 n. 2 (3d Cir. July, 3, 2013) (citing *Lewis v. Attorney General of US*, 878 F.2d 774, 777 (3d Cir. 1989)).

5

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460–61 (3d Cir. 1989) (the non-movant must present affirmative evidence—more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents ( i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex,* 477 U.S. at 322. *See also Saldana v. Kmart Corp.,* 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F. App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir.2005)).

When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

Because Plaintiff is proceeding *pro se*, the Court is required to liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nonetheless, this does not require the

---

[4] The TB test came back negative and Plaintiff was eventually returned to SCI-Greensburg.

Court to credit his "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). Thus, for example, the mere allegation by Plaintiff that he suffered from a serious medical need or that Defendants were deliberately indifferent to that need is insufficient to establish that there is a genuine issue of material fact. Rather, the allegation must be supported by evidence, which the Court will evaluate under the standard described above to determine if there is merit beyond mere conclusions.

### DISCUSSION

Defendants argue that they are entitled to summary judgment because Plaintiff has failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and, in the alternative, challenge the merits of Plaintiff's various claims. Plaintiff has also filed a motion for summary judgment. Each of these arguments will be addressed seriatim.

A.    Failure to Exhaust Administrative Remedies[5]

The moving Defendants contend that they are entitled to the entry of judgment in their favor as a matter of law with regard to Plaintiff's Eighth Amendment claims because Plaintiff did not comply with all requirements of the Pennsylvania Inmate Grievance System and thereby failed to exhaust all administrative remedies available to him.[6]

---

[5]  Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. *Nyhuis v. Reno,* 204 F.3d 65, 69 n. 4 (3d Cir. 2000) ( "[W]e agree with the clear majority of courts that § 1997e(a) is not a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[6]  Defendants first raised the affirmative defense of failure to exhaust administrative remedies in

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. *Porter v. Nussle*, 534 U.S. 516 (2002); *Concepcion v. Morton*, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. *Woodford v. Ngo*, 548 U.S. 81, 87–91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective. . . appeal." *Id.* at 83; *see also Spruill v. Gillis*, 372 F.3d 218, 228–29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [ . . . ] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps

---

their respective Answers. *See* ECF Nos. 53 and 54.

settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

The DOC maintains a grievance system which offers a three-phase grievance and appeals procedure. *See* DC–ADM 804. First, an inmate may submit a grievance to the inmate counselor within fifteen (15) days of the events giving rise to the grievance. The inmate is required to legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to "initial review." *Spruill v. Gillis,* 372 F.3d at 232, 233. Within ten (10) working days, the grievance coordinator transmits a decision to the inmate. Next, if the inmate is dissatisfied with the disposition of the grievance, he may, within ten (10) days of the grievance coordinator's decision, appeal to the Facility Manager/Superintendent for a second level of review, who must provide a decision within another ten (10) working days. *Id.* at 232. Finally, an inmate may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals within fifteen (15) working days of the decision of the Facility Manager/Superintendent, and the Secretary's Office has thirty days in which to issue a decision. *Id.*

The PLRA itself does not have a "name all defendants" requirement. *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199, 217 (2007)). However, the United States Court of Appeals for the Third Circuit has found that where the inmate fails to specifically name the individual in the grievance or where the grievance is untimely or otherwise defective, claims against an accused individual are procedurally defaulted. *Spruill v. Gillis*, 372 F.3d at 234. *See Woodford v. Ngo*, 548 U.S. at 90-91 (exhaustion of administrative remedies under the PLRA requires "using all steps that the agency holds out," and "demands compliance with an agency's deadlines and other critical procedural rules.")

Applying this procedural default component, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with the statutory exhaustion requirement. *Harris v. Armstrong,* 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003). An inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. *Oliver v. Moore*, 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff alleged ceased efforts to impede grievance, prisoner failed to follow through on grievance.)

This broad rule, however, admits of one narrowly defined exception. If the actions of prison officials in some fashion contributed to the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, courts have recognized a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the state requires*." Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005); *Davis v. Warman*, 49 F. App'x at 368.

In this case, the Medical Defendants and the Commonwealth Defendants Sanner and Kwisnek argue that they are entitled to summary judgment because Plaintiff has failed to name them in his relevant grievances, which constitutes a procedural default. All the Commonwealth Defendants argue that they are entitled to summary judgment because Plaintiff has failed to take the relevant grievances to final review, which also constitutes a procedural default.

The summary judgment record reflects that Plaintiff has filed at least twenty-three (23) grievances from SCI-Greensburg. *See* ECF No. 92-1. Of these grievances, only three (3) relate to claims against medical staff, *to wit*: Grievance Nos. 408433 (claims regarding conditions experienced while temporarily transferred to SCI-Fayette), 408778 (claims regarding breach of confidentiality by the correctional officers); and 410424 (claims regarding medical care and breach of confidentiality). Grievance No. 408433 was denied as follows: "because you have claimed a problem with Fayette, we here at Greensburg cannot fully apprise your case while at Fayette. You can resubmit your grievance, however, you need to specifically note that SCI Fayette should be addressing your concerns. . . ." ECF No. 92-2. Thus, only Grievance Nos. 408778 and 410424 are relevant to this case.

A close review of both Grievance Nos. 408778 and 410424 reveals that Defendants are correct in that Plaintiff did not name any of the Medical Defendants nor did he name the Commonwealth Defendants Sanner and/or Kwisnek in his grievances. Therefore, the claims against these Defendants are procedurally barred.

The summary judgment record also confirms that Plaintiff did not take either Grievance No. 408778 or 410424 to final review. With Grievance No. 408778, although Plaintiff filed the grievance with the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), he was

sent an Action Form dated June 4, 2012 by SOIGA requesting "a legible copy of [his] initial

grievance, signed and dated," the "initial review response / rejection by the Grievance Officer,"

and his "appeal to final review, signed and dated." (ECF No. 101-1 at 30.) The summary

judgment record reflects that Plaintiff failed to provide any of the requested documentation.

With Grievance No. 410424, Plaintiff was informed by SOIGA on June 12, 2012, that he

had not "submitted all completed documents necessary for conducting final review" and that he

had fifteen (15) working days to provide SOIGA with the completed documents. (ECF No. 101-

1 at 17.) On August 1, 2012, because SOIGA had not received the necessary paperwork, the

grievance was dismissed without review.

Plaintiff argues that at the time SOIGA requested the additional documentation, he was in

Administrative Custody and "could not send mail outside the institution . . . These regulation

restricted my rights and hindered my exhaustion remedies . . . and by the time mail restriction

ended, Plaintiff's fifteen day dead line expired, and these cases were dismissed." Pl's Response

at 5-6 (ECF No. 108).[7] The Commonwealth Defendants respond that Plaintiff could not have

been on mail restriction because Plaintiff obviously sent some documentation to SOIGA in an

attempt to gain final review, as SOIGA sent Plaintiff an Action Form informing him that his

documentation was inadequate for final review.[8]

---

[7] From the summary judgment record, it appears that Plaintiff may have been in administrative
custody from June 12, 2012, until sometime in mid-September, 2012. (ECF No. 104 at 5). It
also appears that Plaintiff received a sanction of "60 days DC plus 60 Days of mail restriction."
(ECF No. 104-1 at 8.)

[8] Both notifications sent by SOIGA to Plaintiff specifically state: "This serves to acknowledge
receipt of information based on your intent to appeal the grievance noted below to final review. .

Given the facts as alleged by Plaintiff, the mandatory nature of the exhaustion requirement under the PLRA, and the rarity of finding circumstances that excuse exhaustion, the Court is satisfied that Plaintiff's failure to exhaust his administrative remedies should not be excused.

Because Plaintiff's claims were not properly exhausted, it is not necessary for the Court to reach the merits of Plaintiff's claims. However, in an abundance of caution, and assuming *arguendo*, that an extraordinary reason exists for an exemption to the exhaustion requirement, the Court will proceed to address the merits of Plaintiff's claims.

B.      Eighth Amendment Claims - Delay / Denial  of Adequate Medical Treatment

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976).  The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle,* 429 U.S. at 104.  Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of

---

. ."  *See* ECF No. 101-1 at pp. 17 and 30.

13

injury, *Durmer v. O'Carroll,* 991 F.2d 64, 68 (3d Cir.1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon,* 897 F.2d 103, 109 (3d Cir. 1990).

Deliberate indifference is generally not found when some level of medical care has been offered to the inmate. *Clark v. Doe,* No. 99–5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct.13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. *United States ex rel. Walker v. Fayette Cnty.,* 599 F.2d 573, 575 n. 2 (3d Cir. 1979). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. *Inmates of Allegheny Cnty. Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Goodwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

Plaintiff's Eighth amendment claims against the Defendants are as follows:

a.        "The claims against Dr. Mollura and Debra Yothers, P.A. involve more than the timeliness of HIV treatment . . . . There is no dispute that Plaintiff received HIV treatment. However, their (sic) is a dispute that Doctor Mollura did not provide adequate medical treatment for the pneumonia and TB symptoms at the time of March complaint. There is no dispute that Ms. Yothers and Mr. Mollura had knowledge of Plaintiff medical conditions, the high intensity of the risk of Plaintiff catching pneumonia, TB, and Hep B due to the fact that the HIV attacks the immune system and due to the fact that HIV treatment was delayed because Ms. Yothers did

not review medical records in October 2011 as ordered."  Pl's Resp. to Medical Defendants'

Brief in Support of Motion for Summary Judgment (ECF No. 106 at 2);

      b.     Plaintiff identifies Defendant Kwisnek as the person who "over see's (sic) the

medical staff at Greensburg and she may be the one responsible for requesting medical records."

Fifth Amended Complaint, ¶ 5; and

      c.     Defendant Sanner allegedly saw Plaintiff in March 2012, took his vitals and then

sent Plaintiff back to his room without allowing Plaintiff to see a physician's assistant or doctor.

      Plaintiff's allegations will be addressed seriatim.

      1.     *The Medical Defendants*

      The Medical Defendants argue that the absence of expert testimony regarding causation

precludes Plaintiff's claim and also argue that Plaintiff has failed to demonstrate a genuine issue

of material fact that Defendants were deliberately indifferent to his medical needs.  The Court

need not reach the issue concerning expert testimony[9] because, viewing the evidence in the light

most favorable to Plaintiff, the Court finds that Plaintiff has failed to demonstrate a genuine issue

of material fact on the issue of deliberate indifference.

---

[9]  The Court of Appeals for the Third Circuit has held that a prisoner's claim of deliberate
indifference to a serious medical need requires expert testimony when the seriousness of the
injury or illness would not be apparent to a lay person.  *Boring v. Kozakiewicz*, 833 F.2d 468,
473-74 (3d Cir. 1987) (concluding that jury would not be in a position to decide whether ulnar
nerve injury, scalp condition, knee disorder, and migraine headaches could be classified as
"serious"). *See also Brightwell v. Lehman*, 637 F.3d 187, 194 n. 8 (3d Cir. 2011) (finding that
"expert testimony is not necessarily required to establish the existence of a serious medical need.
Other forms of extrinsic proof - e.g., medical records, photographs, etc. - may suffice in some
cases.")  However, Defendants' argument here is not that expert testimony is required to prove
the seriousness of Plaintiff's injuries, but rather that it is necessary to link Defendants' care or
any alleged delay in care to an actual injury.

The medical evidence of record reflects Plaintiff was repeatedly given medical attention. He received prescription medications, underwent multiple laboratory diagnostic tests, and was evaluated on numerous occasions. Further, upon his arrival at SCI-Greensburg on October 5, 2011, Plaintiff was medically screened and extensively interviewed regarding his present and past medical conditions. *See* Initial Reception Screening / PV Returns Greater Than 90 Days (ECF No. 92, Exhibit 7). At no time during the initial screening process did Plaintiff ever state he was HIV positive. In addition to the Initial Screening interview, an extensive medical evaluation was also performed on October 5, 2011. A chest x-ray was obtained and a TB test was performed. department (ECF No. 92, Exhibit 10 and 11). Also, the medical records department was notified on that date of the need to obtain Plaintiff's archived medical chart. (*Id*. at Exhibit 9.) Plaintiff's first medical care at SCI-Greensburg was in the form of a Clinic Visit on October 14, 2011. It was noted that Plaintiff had asthma and sleep apnea. The record also reflects that on this date Defendant Yothers ordered a review of Plaintiff's "old chart." (*Id*. at Exhibit 8).

Between October 21, 2011 and December 27, 2011, Plaintiff was followed routinely for psychiatric care and treatment. No physical medical issues or problems are noted in the medical evidence of record at any time during that period. (*Id*. at Exhibit 9).

Plaintiff's next documented medical attention is on February 7, 2012, when lab results were reviewed and a questionable white blood cell count was identified. The lab tests were repeated and the results were reviewed on February 14, 2011. Plaintiff was seen the next day by Defendant Yothers, complaining of being tired. (*Id*.).

16

On February 29, 2012, Defendant Yothers reviewed the archived medical chart and noted that lab tests results in December 2010 were positive for HIV. Defendants thereafter referred Plaintiff to the Infectious Disease Clinic. Treatment for HIV was instituted on or by March 7, 2012, following a review of additional lab results.

### 2. *Defendant Lori Kwisnek*

In his Response to the Commonwealth Defendant's Brief, Plaintiff specifically states "Kwisnek is not held liable. She has Immunity." (ECF No. 108 at 3, ¶ 1(A)). Thus, it appears Plaintiff has voluntarily dismissed his claim against Defendant Kwisnek.[10]

### 3. *Defendant Ken Sanner*

Plaintiff alleges that in March 2012, he complained to Defendant Sanner about not feeling well, that Defendant Sanner took his vital signs, and then, at the direction of Defendant Meister, Defendant Sanner allegedly sent Plaintiff back to his cell, without allowing Plaintiff to see a physician's assistant or doctor. Defendants submit a Declaration of Kenneth Sanner in which he states that he has not recollection of seeing Plaintiff in March 2012. (ECF No. 101-1, at 32.) Further, Defendant Sanner states that if he had seen Plaintiff, such an encounter would have been documented in the "Progress Notes" of Plaintiff's medical records.

A review of the medical evidence of record demonstrates that the only Progress Note entry from Defendant Sanner is a March 30, 2012, entry that reflects that Defendant Sanner

---

[10]  Further, Defendant Kwisnek is the Health Care Administrator at SCI-Greensburg, a non-physician layperson. The case law is clear that health care administrators are "undisputably administrators, not doctors . . . " *Thomas v. Dragovich,* 2005 WL 1634260, *6 (3d Cir. 2005), and, therefore, "cannot be deemed deliberately indifferent simply because the lay administrator did not challenge the physician's care or respond directly to a prisoner's request for more or different treatment." *Judge v. Medical Dept at SCI-Greene,* Civ. Act. No. 05-1776, 2007 WL 1576400, *4 (W.D. Pa. May 31, 2007).

spoke to WRH about Plaintiff's inpatient status.  (ECF No. 92-8, at 7.)  Additionally, a review of

the "Physician's Orders" section of Plaintiff's medical records indicate that there are only two

entries from Defendant Sanner - March 13 and 14, 2012, both of which reveal that Sanner was

making sure that the doctor's orders were being effectuated.  These entries do not show that

Sanner saw Plaintiff on those days.

By presenting the above-cited evidence to the Court, Defendants have satisfied their

initial burden of proving the absence of evidence supporting Plaintiff's claim. They have put

forward evidence to show that Defendants were in no deliberately indifferent to Plaintiff's

medical needs.

The burden now shifts to Plaintiff to come forward with specific facts showing a genuine

issue for trial.  Fed. R. Civ. P. 56(e).  He has not met that burden. Instead, he sets forth

unsubstantiated allegations. The Court finds that the record is insufficient to establish deliberate

indifference on the part of the Medical Defendants and the Commonwealth Defendants Kwisnek

and Sanner and that Plaintiff has not identified any specific facts, supported by evidence, which

demonstrate a genuine  issue of material fact for trial.

In sum, the Court finds that Defendants have satisfied their burden of showing that there

is no genuine issue of material fact as to whether they were deliberately indifferent to Plaintiff's

serious medical needs.  Accordingly, summary judgment will be entered in favor of these

Defendants on Plaintiff's Eighth Amendment claims.

C.     Motion for Summary Judgment filed by Plaintiff

At the outset the Court notes that Plaintiff's motion for summary judgment does not

comply with Local Civil Rule 56.B.1-3 as Plaintiff did not file a concise statement in support of

his motion, a memorandum in support of the motion, or an appendix to his motion.

Notwithstanding these deficiencies, the motion will be denied because in reality it is nothing more than an reiteration of the claims set forth in his Fifth Amended Complaint. As such, Plaintiff's motion will be denied.

D.    Sua Sponte Dismissal of Defendant Patricia Meister and Defendant W. Allamon

1.    *Patricia Meister*

At the time summary judgment motions were filed, service had yet to be effectuated on Defendant Patricia Meister. Counsel only recently entered a Notice of Appearance on her behalf. *See* ECF No. 116. Nonetheless, the Court will *sua sponte* grant her summary judgment for the following reasons.

The United States Supreme Court recognizes "that district courts . . . possess the power to enter summary judgment sua sponte, so long as the losing party was on notice that [he] had to come forward with all of [his] evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *see also Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004); *Chambers Dev. Co. v. Passaic Cnty. Utils. Auth.*, 62 F.3d 582, 584 n.5 (3d Cir. 1995). Before a district court grants summary judgment to a non-moving party it must first place the adversarial party on notice that the court is considering such sua sponte action. *See Gibson,* 355 F.3d at 222. Our appellate court has explained that "notice" means "that the targeted party 'had reason to believe the court might reach the issue and receive a fair opportunity to put its best foot forward.'" *Id.* at 223 (quoting *Leyva v. On the Beach, Inc.,* 171 F.3d 717, 720 (1st Cir. 1999) and *Jardines Bacata, Ltd. v. Diaq-Marquez*, 878 F.2d 1555, 1561 (1st Cir. 1989)) (quotations omitted). Additionally,

> [w]here it appears clearly upon the record that all of the evidentiary materials that
> a party might submit in response to a motion for summary judgment are before the
> court, a sua sponte grant of summary judgment against that party may be
> appropriate if those materials show no material dispute of fact exists and that the
> other party is entitled to judgment as a matter of law.

*Id.* at 224 (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996)).  Despite the general notice requirement to the nonmoving party, our court of appeals has concluded that, notice to the adversarial party is not required in three circumstances: (1) when there exists a fully developed record; (2) when the adversarial party would not be prejudiced by a sua sponte grant of summary judgment; and (3) when the decision is based on a purely legal issue.  *Id.*

Although a court's *sua sponte* grant of summary judgment must be undertaken with the utmost caution given the serious consequences to the adversarial party, in this instance such action is appropriate.  Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Patricia Meister is  identical and arises from the same set of factual allegations as his claims against Defendant Sanner, to which he responded extensively in his opposition brief.  Plaintiff was on fair notice that the Court would consider summary judgment in favor of Defendant Patricia Meister on these claims because they are coexistent to the claims against Defendant Sanner.  Therefore, notice and an opportunity to be heard have already been provided.  Additionally, and more importantly, the summary judgment record before the Court is fully developed.  All evidence Plaintiff could potentially proffer in support of his deliberate indifference claim is in the record presently before the Court.

As with the moving Defendants, the record simply does not reflect that Defendant Patricia Meister was deliberately indifferent to Plaintiff's medical needs.

2.      *W. Allamon*

According to the Fifth Amended Complaint, Defendant W. Allamon is a R.N. at SCI-Fayette who allegedly improperly placed Plaintiff in the R.H.U., rather than allowing him to stay in the Medical Unit for observation. Defendant Allamon is mentioned only in passing on Page 5 of the Fifth Amended Complaint.  The Court finds that Plaintiff's allegations against Defendant Allamon amount to nothing more than bald assertions.

Moreover, "[i]t is fundamental that before a court may impose upon a defendant a personal liability or obligation in favor of the plaintiff or may extinguish a personal right of the defendant it must have first obtained jurisdiction over the person of the defendant." *Ayers v. Jacobs & Crumplar*, *P.A.,* 99 F.3d 565, 569 (3d Cir.1996) (quotations omitted). Federal Rule of Civil Procedure 4(m) provides that "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court ... shall dismiss the action without prejudice ... provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." Fed.R.Civ.P. 4(m).

The U.S. Marshals notified Plaintiff by "Summons / Return of Service Returned Executed" filed April 10, 2013 (ECF No. 79) that it was unable to effectuate service on Defendant Allamon as the Summons had been returned unexecuted with a notation of "insufficient address."  Plaintiff has not asked for help from the court or sought an extension of time to effect service. Indeed, he has taken no action. Accordingly, the Court finds that Plaintiff has failed to show good cause for his failure to serve and Defendant Allamon, therefore, will be dismissed from this lawsuit. *See Miles v. Aramark Corr. Serv. at Curran Fromhold Corr.*, 236 F. App'x 746 (3d Cir. 2007), *cert. denied,* 552 U.S. 1320 (2008) (not published) (no abuse of

discretion by district court in dismissing complaint when the named defendants were not timely served, the matter was brought to plaintiff's attention, and plaintiff did not request an extension of time to effect service or otherwise show good cause for the failure to serve).

E.    Plaintiff's State Law Claims

Plaintiff also brings several state law claims, *to wit*: (i) claim for medical malpractice / negligence against Dr. Mollura and Defendant Yothers for their care or alleged delay in care of Plaintiff's medical needs; (ii)  a claim for breach of confidentiality against Dr. Dascani for alleging discussing his medical information on two occasions in areas that were not secure and were capable of being overheard by other inmates; and (iii) a claim for breach of confidentiality against Defendants Sheetz and Daugherty because the "driver" of the van allegedly told an inmate that Plaintiff had TB.[11]

The alleged conduct of these Defendants does not amount to any violation of federal civil rights law.  Rather, these are purely state law claims between nondiverse parties.

Jurisdiction over supplemental claims is governed by 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."   However, the

---

[11]  To the extent that Plaintiff's claims that the disclosure of his medical information may be interpreted as a claim that his rights under HIPPA were violated, the Court notes that neither the United States Supreme Court nor the United States Court of Appeals for the Third Circuit has specifically addressed the issue of whether HIPAA creates a private right of action.  However, other Pennsylvania courts which have addressed the issue have all found that HIPAA does not create a private right of action. *See Tapp v. Brazill*, No. Civ. A. 11-677, 2011 WL 6181215 (E.D. Pa. Dec. 13, 2011); *Dominic J. v. Wyoming Valley West High School*, 362 F. Supp.2d 560, 574 (M.D. Pa.2005); *Carney v. Snyder*, No. Civ. A. 06–23, 2006 WL 2372007, at *4 (W.D. Pa., Aug. 15, 2006).

Court has discretion to decline to exercise supplemental jurisdiction, if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The Court of Appeals has stated that "the district court must decline the . . . state claims unless considerations of judicial economy, convenience and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco,* 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

Because the Court has granted summary judgment as to all Plaintiff's federal claims, and given that there are no extraordinary circumstances which would warrant the exercise of supplemental jurisdiction over the pendent state law claims, the Court will decline to exercise supplemental jurisdiction. Plaintiff's claims for medical malpractice / negligence and breach of confidentiality will be dismissed without prejudice to allow Plaintiff an opportunity to raise these claims in state court. *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992) (once all federal claims have been dropped from the case, the case should either be dismissed or transferred to the appropriate Pennsylvania Court of Common Pleas pursuant to 42 Pa. Cons. Stat. Ann. § 5103(b)).

## ORDER OF COURT

**AND NOW,** this 15th day of October, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.      The Motion for Summary Judgment filed by Plaintiff is **DENIED**;

2.      The Motion for Summary Judgment filed by the Medical Defendants is **GRANTED** as to Plaintiff's federal claims; and

3.    The Motion for Summary Judgment filed by the Commonwealth Defendants

**GRANTED** as to Plaintiff's federal claims.

It is further **ORDERED** that summary judgment is **GRANTED** in favor of  Defendants

Patricia Meister and M. Allamon, *sua sponte*.

It is further **ORDERED** that Plaintiff's state law claims for medical malpractice /

negligence and breach of confidentiality are dismissed without prejudice to allow Plaintiff an

opportunity to raise these claims in state court.

The Clerk of Court shall docket this case closed.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules

of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by

Rule 3 of the Federal Rules of Appellate Procedure.


/s *Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge



cc:    EDWARD LEON BOONE
       JJ4437
       SCI Pittsburgh
       PO Box 99991
       Pittsburgh, PA 15233

       Robert A. Willig
       Office of Attorney General
       Email: rwillig@attorneygeneral.gov

       J. Eric Barchiesi
       Eisenberg & Torisky
       Email: eric.barchiesi@aig.com